UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
F I L E D

MAY 3 1 2005

AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 04-350-GWU

LATRICIA A. MILLS,                                              PLAINTIFF,

VS.                        **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                      DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of her application for Supplemental Security Income (SSI). The appeal is

currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.  Is the claimant currently engaged in substantial gainful activity?
    If yes, the claimant is not disabled. If no, proceed to Step 2.
    See 20 CFR 404.1520(b), 416.920(b).

2.  Does the claimant have any medically determinable physical
    or mental impairment(s)? If yes, proceed to Step 3. If no, the
    claimant is not disabled. See 20 CFR 404.1508, 416.908.

3.  Does the claimant have any severe impairment(s)--i.e., any
    impairment(s) significantly limiting the claimant's physical or
    mental ability to do basic work activities? If yes, proceed to
    Step 4. If no, the claimant is not disabled. See 20 CFR
    404.1520(c), 404.1521, 416.920(c), 461.921.

1

4.    Can the claimant's severe impairment(s) be expected to result
      in death or last for a continuous period of at least 12 months?
      If yes, proceed to Step 5. If no, the claimant is not disabled.
      See 20 CFR 404.920(d), 416.920(d).

5.    Does the claimant have any impairment or combination of
      impairments meeting or equaling in severity an impairment
      listed in 20 CFR Part 404, Subpart P, Appendix 1 (Listing of
      Impairments)? If yes, the claimant is disabled. If no, proceed
      to Step 6. See 20 CFR 404.1520(d), 404.1526(a), 416.920(d),
      416.926(a).

6.    Can the claimant, despite his impairment(s), considering his
      residual functional capacity and the physical and mental
      demands of the work he has done in the past, still perform this
      kind of past relevant work?  If yes, the claimant was not
      disabled. If no, proceed to Step 7. See 20 CFR 404.1520(e),
      416.920(e).

7.    Can the claimant, despite his impairment(s), considering his
      residual functional capacity, age, education, and past work
      experience, do other work--i.e., any other substantial gainful
      activity which exists in the national economy?  If yes, the
      claimant is not disabled.      See 20 CFR 404.1505(a),
      404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent

to the judicial review of administrative agency action apply.   Review of the

Commissioner's decision is limited in scope to determining whether the findings of

fact made are supported by substantial evidence. Jones v. Secretary of Health and

Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial

evidence" is "more than a mere scintilla[; i]t means such relevant evidence as a

2

reasonable mind might accept as adequate to support a conclusion. . ." <u>Wright v.</u>
<u>Massanari</u>, 321 F.3d 611, 614 (6th Cir. 2003) <u>(quoting</u> <u>Kirk v. Secretary of Health</u>
<u>and Human Services</u>, 667 F.2d 524, 535 (6th Cir. 1981). It is based on the record
as a whole and must take into account whatever in the record fairly detracts from
its weight. <u>Garner</u>, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact
that the Commissioner has improperly failed to accord greater weight to a treating
physician than to a doctor to whom the plaintiff was sent for the purpose of
gathering information against his disability claim. <u>Bowie v. Secretary</u>, 679 F.2d 654,
656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion
is based on objective medical findings. <u>Cf. Houston v. Secretary of Health and</u>
<u>Human Services</u>, 736 F.2d 365, 367 (6th Cir. 1984); <u>King v. Heckler</u>, 742 F.2d 968,
973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on
the trier of fact only if they are not contradicted by substantial evidence to the
contrary. <u>Hardaway v. Secretary</u>, 823 F.2d 922 (6th Cir. 1987). These have long
been well-settled principles within the Circuit. <u>Jones</u>, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner
may assess allegations of pain. Consideration should be given to all the plaintiff's
symptoms including pain, and the extent to which signs and findings confirm these
symptoms. 20 CFR Section 404.1529 (1991). However, in evaluating a claimant's
allegations of disabling pain:

3

> First, we examine whether there is objective medical evidence of an underlying medical condition.   If there is, we then examine:   (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 CFR 416.965(a) and 20 CFR 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 CFR Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent

5

lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 CFR 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 CFR 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 CFR Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony

only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Latricia A. Mills, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of fibromyalgia, a generalized anxiety disorder, and depression. (Tr. 16). Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that the plaintiff retained the residual functional capacity to perform a significant number of jobs existing in the economy and, therefore, was not entitled to benefits. (Tr. 18-23). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age, education, and work experience could perform any jobs if she were capable of medium level exertion, and also had the following non-exertional impairments. (Tr. 45). She: (1) could occasionally climb ladders, ropes, and scaffolds; and (2) would be limited to simple, non-detailed tasks where public and co-worker contact was casual and infrequent, where supervision was direct and nonconfrontational, and where changes in the workplace were infrequent and gradually introduced. (Tr. 45-6). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 46).

7

Mills

On appeal, this Court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

The ALJ rejected a functional capacity assessment given by the plaintiff's treating psychiatrist, Dr. Cecelia Carpio-Carigaba. Dr. Carpio submitted office notes reflecting treatment of the plaintiff starting in July, 2002, when the plaintiff had first been seen on referral from her family physician due to panic attacks and a fear of being in public, among other problems. (Tr. 130). She was given diagnoses of social anxiety, possible bipolar disorder, and "rule out" panic attacks. (Id.). Her Global Assessment of Functioning (GAF) score was given as "50-60." A GAF score of 50 reflects any serious impairment in social, occupational, or school functioning, while a GAF score of 51 to 60 reflects moderate difficulties in these areas. Diagnostic and Statistical Manual of Mental Disorders (Fourth Edition-Text Revision), p. 34. The plaintiff was treated at regular intervals from that point on, with the most recent office notes from Dr. Carpio being dated February 11, 2004. (Tr. 245). Her diagnosis was still being given as social anxiety, bipolar disorder, and generalized anxiety disorder. (Id.). No new GAF score was given, but Dr. Carpio's functional capacity assessment, dated February 27, 2003, states that the plaintiff would have a poor (defined as "seriously limited but not precluded") ability to relate to co-workers, deal with the public, deal with stresses, interact with supervisors, understand, remember, and carry out detailed and complex job instructions, and

8

relate predictably in social situations. (Tr. 214-16). Presented with a hypothetical question including these restrictions, the VE testified that there would be no jobs the individual could perform. (Tr. 47).

The ALJ rejected Dr. Carpio's conclusions, however, finding that they were not supported by her treatment notes. For instance, the ALJ cited a February, 2003 note as indicating that the psychiatrist was questioning the plaintiff's inability to be in public in view of her ability to keep doctor's appointments. (Tr. 16, 237). The entire note, while partially illegible, also indicates, however, that the plaintiff "had a panic attack in the waiting room" and was described as very anxious and "wringing her hands." (Tr. 237). She stated that she was sleeping only three hours at night, and was exhausted during the day, and was also said to have an anxious and depressed mood and constricted, anxious and hypersensitive affect. (Id.). In other words, the same office note describes her as "anxious" three separate times. Subsequent notes from the physician show that the same diagnoses were maintained, and the plaintiff was still identified as having an anxious or "shaky" mood, and a constricted affect. (E.g., Tr. 242-6). In view of these comments, the psychiatrist's opinion appears to be well supported, rather than the opposite.

Against the opinion of the treating source, there was a one-time consultative psychiatric evaluation by Dr. Kevin Eggerman, in October, 2002. Dr. Eggerman, while also finding the plaintiff anxious, felt that she would have a "fair" ability to relate to co-workers and supervisors and tolerate work-related stress. (Tr. 148-9).

Mills

However, Dr. Eggerman saw the plaintiff only one time, and did not review any medical records. It is also noteworthy that a consultative physical examiner, Dr. Roy Stauffer, also examined the plaintiff in October, 2002, indicated, in contrast to Dr. Eggerman, that "from a mental status standpoint she was extremely anxious and always afraid I was going to hurt her when I would ask her to do maneuvers." (Tr. 153).

In view of the totality of the evidence, the Court finds that the restrictions of the treating psychiatrist should have been given controlling weight. In view of the testimony of the VE that no jobs would be available to person of these restrictions, a judgment and order will enter awarding the plaintiff benefits.

This the ___31___ day of May, 2005.

G. WIX UNTHANK
SENIOR JUDGE

10